IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**CODY J. CAGLE**                                                                                          **PLAINTIFF**

v.                          Case No. 3:22-cv-00326-KGB

**TOSHA JERMERISON,** *et al*.                                                              **DEFENDANTS**

## ORDER

Plaintiff Cody J. Cagle, an inmate at the Poinsett County Detention Center, filed a *pro se* complaint, alleging City of Trumann District Court Clerk Tosha Jermerison, Trumann Police Department Officers Roberts, David Davison, and Sergeant Blain Cagle, Poinsett County District Judge Ron Hunter, and Poinsett County Sherriff's Department Officer Jay Paul Woods and Detective Brad Felkins violated his federally protected rights (Dkt. No. 2). Before the Court is Mr. Cagle's motion for leave to proceed *in forma pauperis* (Dkt. No. 1). The Court will also screen Mr. Cagle's complaint.

  I.     *In Forma Pauperis* Application

Under the Prison Litigation Reform Act ("PLRA"), a prisoner who is permitted to file a civil action *in forma pauperis* still must pay the full statutory filing fee of $350.00. 28 U.S.C. § 1915(b)(1). The only question is whether a prisoner will pay the entire filing fee at the initiation of the proceeding or in installments over a period of time. *Ashley v. Dilworth*, 147 F.3d 715, 716 (8th Cir. 1998). Even if a prisoner is without assets and unable to pay an initial filing fee, he will be allowed to proceed with his 42 U.S.C. § 1983 claims, and the filing fee will be collected by the Court in installments from the prisoner's inmate trust account. 28 U.S.C. § 1915(b)(4).

If the prisoner's case is subsequently dismissed for any reason, including a determination that it is frivolous, malicious, fails to state a claim, or seeks monetary relief against a defendant

who is immune from such relief, the full amount of the $350.00 filing fee will be collected, and no portion of this filing fee will be refunded to the prisoner. *See* 28 U.S.C. § 1915(b)(1) ("Notwithstanding subsection (a), if a prisoner brings a civil action or files an appeal *in forma pauperis*, the prisoner shall be required to pay the full amount of a filing fee."); *see also Jackson v. N.P. Dodge Realty Co.*, 173 F. Supp. 2d 951, 952 (D. Neb. 2001) ("The Prison Litigation Reform Act (PLRA) makes prisoners responsible for their filing fees the moment the prisoner brings a civil action or files an appeal. Thus, when an application to proceed *in forma pauperis* (IFP) is filed in such a case, 'the only issue is whether the inmate pays the entire fee at the initiation of the proceeding or over a period of time under an installment plan.'") (citations omitted) (quoting *Henderson v. Norris*, 129 F.3d 481, 483 (8th Cir. 1997)).

Mr. Cagle has submitted a declaration that makes the showing required by 28 U.S.C. § 1915(a) (Dkt. No. 1). Accordingly, Mr. Cagle's motion to proceed *in forma pauperis* is granted. Based on the information contained in Mr. Cagle's account information sheet, the Court will assess an initial partial filing fee of $16.03. After payment of the initial filing fee, Mr. Cagle will be obligated to make monthly payments in the amount of 20% of the preceding month's income credited to Mr. Cagle's prison trust account each time the amount in the account exceeds $10.00 until the $350.00 filing fee is fully paid. 28 U.S.C. § 1915(b)(2).

**II.     Background**

Mr. Cagle alleges that he was unlawfully detained and falsely imprisoned from May 4, 2022, until May 6, 2022 (Dkt. No. 2 at 6). He explains that on January 11, 2022, and again on April 14, 2022, that he "bonded out on a $100,000" (*Id.*). Despite having been released on bond, Mr. Cagle states that "less than 20 days" later he was pulled over on a misdemeanor failure-to-

appear ("FTA") charge (*Id.*).  Mr. Cagle believes Ms. Jermerison failed to "pull" the FTA warrant resulting in his "harassment" by the police (*Id.*).

Mr. Cagle explains that he appeared before Judge Hunter on May 19, 2022, and told Judge Hunter as well as Detective Felkins that he had already been granted bond on the FTA charges (*Id.*).  According to Mr. Cagle, Detective Felkins researched the matter and confirmed to Judge Hunter that Mr. Cagle previously had bonded out on two felonies but that the misdemeanor FTA "wasn't pulled" (*Id.*).  Mr. Cagle states that Judge Hunter then told him, "it's your lucky day" and released Mr. Cagle on his own recognizance (*Id.*).  Mr. Cagle contends that, before leaving the courtroom, Mr. Cagle asked Judge Hunter about the two days he had spent in jail (*Id.*).  According to Mr. Cagle, Judge Hunter told him to ask the city court clerk (*Id.*).  Three week later, on May 28, 2022, Mr. Cagle states that he was again jailed on an FTA warrant (*Id.*).  Mr. Cagle explains that, because he did not want to stay in jail like he had previously, he posted a $405.00 bond to be released (*Id.*).

After his January 2022 arrest, Mr. Cagle states that he appeared at his next court date, set on February 23, 2022, and Mr. Cagle appears to suggest that there was no basis for the FTA warrant to have issued (*Id.*).  Mr. Cagle asserts that, after his April 2022 release, he knew officers would "start coming after [him] for the misdemeanor warrant" (*Id.*).  Mr. Cagle complains that the officers would not leave him alone.  Finally, Mr. Cagle admits that, when he was stopped on April 14, 2022, officers found him in possession of methamphetamine, but he nevertheless asks that the charges stemming from that stop and arrest to be dropped, arguing the officers had "no real reason to pull him over" (*Id.*).  Mr. Cagle seeks damages and asks that officers stop harassing him (*Id.*).

A public record search clarifies the timeline of events recited by Mr. Cagle.  Mr. Cagle has a number of criminal convictions, the review of which explains his alleged traffic stops and also

3

helps the Court correlate to the dates mentioned in Mr. Cagle's complaint. Mr. Cagle's criminal history as it relates to the time frame raised in his complaint is as follows.

Mr. Cagle pled guilty on March 18, 2018, in Poinsett County Circuit Court to several drug crimes. *State v. Cagle*, Case No. 56CR-17-415 (Poinsett County) (Sentencing Order). Mr. Cagle was sentenced to 18 months of imprisonment to be followed by five years of suspended imposition of sentence (*Id.*). A condition of the suspended sentence included submission to searches of himself, his home, and his car whenever requested by law enforcement officers (*Id.*) (Order SIS Conditions). Mr. Cagle was still subject to the terms of his suspended sentence during the spring of 2022—the period in which he alleges he was harassed and unlawfully detained.

Mr. Cagle was arrested on January 11, 2022, and charged with burglary, being a felon in possession of a firearm, and false imprisonment. *State v. Cagle*, Case No. 56CR-22-105 (Poinsett County) (Sentencing Order). Mr. Cagle was arrested again on April 14, 2022, and charged with possession of controlled substances, fleeing, and resisting arrest. *State v. Cagle*, Case No. 56CR-22-302 (Poinsett County) (Sentencing Order). Finally, Mr. Cagle was arrested and charged on June 4, 2022, with theft of property, breaking or entering, fleeing, and possession of drug paraphernalia. *State v. Cagle*, Case No. 56CR-22-507 (Poinsett County) (Order). All three of Mr. Cagle's Poinsett County criminal cases were resolved on March 16, 2023, when Mr. Cagle entered into a negotiated plea agreement. As a result of the plea agreement, many of the charges were *nolle prossed*; however, Mr. Cagle pled guilty to possession of controlled substances in case number 56CR-22-302, and the court sentenced Mr. Cagle to 24 months of imprisonment in the Arkansas Division of Correction. In the same plea hearing, Mr. Cagle pled guilty to being a felon in possession of a firearm in case number 56CR-22-105, and the court sentenced Mr. Cagle to 72 months of suspended imposition of his sentence.

Simultaneously with the Poinsett County criminal matters, Mr. Cagle also had prior criminal matters pending in Craighead County. Mr. Cagle was charged in the City of Jonesboro's district court with misdemeanor criminal trespass, fleeing, and disorderly conduct arising from a September 12, 2020, event. *State v. Cagle*, Case No. JOC-20-6841 (Jonesboro District Court) (Docket Sheet). Likewise, Mr. Cagle was charged in the same court with resisting arrest and possession of a controlled substance stemming from an August 23, 2021, arrest. *State v. Cagle*, Case No. JOC-21-5730 (Jonesboro District Court) (Docket Sheet). When Mr. Cagle failed to appear at a January 12, 2022, hearing in Jonesboro District Court, likely as a result of his Poinsett County arrest the previous day, the Jonesboro District Court issued FTA warrants in both of Mr. Cagle's Jonesboro District Court cases. *State v. Cagle*, Case No. JOC-20-6841 (FTA Warrant); *State v. Cagle*, Case No. JOC-21-5730 (FTA Warrant).

### III.   Screening

The Prison Litigation Reform Act ("PLRA") requires federal courts to screen prisoner complaints seeking relief against a governmental entity, officer, or employee. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that: (a) are legally frivolous or malicious; (b) fail to state a claim upon which relief may be granted; or (c) seek monetary relief from a defendant who is immune from such relief. *Id.* § 1915A(b). The *in forma pauperis* statute also imposes these standards for dismissal. 28 U.S.C. § 1915(e)(2)(B).

An action is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

In reviewing the sufficiency of a *pro se* complaint under the Court's screening function, the Court must give the complaint the benefit of a liberal construction. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). The Court also must weigh all factual allegations in favor of the plaintiff unless the facts alleged are clearly baseless. *Denton v. Hernandez*, 504 U.S. 25, 32 (1992). Although *pro se* complaints are to be liberally construed, the complaint must allege specific facts sufficient to state a claim. *See Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985).

IV.    **Discussion**

In its current form, Mr. Cagle's complaint fails to state a claim on which relief can be granted. Mr. Cagle will be given the opportunity to file a second amended complaint to cure the deficiencies in his pleading.

   A.    **False Imprisonment Claim**

Mr. Cagle asserts that he was falsely imprisoned from May 4 through May 6, 2022 (Dkt. No. 2, at 6). Mr. Cagle, however, offers no facts supporting this claim. Mr. Cagle does not state where, by whom, and under what circumstances he was stopped. Mr. Cagle also does not explain why he was arrested or where and by whom he was held or detained. Mr. Cagle's complaint is completely devoid of facts supporting his false imprisonment claim.

   B.    **Claims Barred By The Supreme Court's Ruling in *Heck v. Humphrey* and Immunity**

      1.    ***Heck v. Humphrey* Doctrine**

Despite the lack of information provided by Mr. Cagle on his false imprisonment claim, he appears to believe it was unlawful given that he had been released on bond following both his January and April 2022 Poinsett County arrests (Dkt. No. 2 at 6). To the extent that Mr. Cagle is seeking damages stemming from those arrests and convictions, his claims fail. If a judgment in favor of a prisoner in a § 1983 action would necessarily imply the invalidity of a state conviction,

continued imprisonment, or sentence, then no claim for damages lies unless the state conviction or sentence is reversed, expunged, or called into question by the issuance of a federal writ of *habeas corpus*. *Heck v. Humphrey*, 512 U.S. 477, 486-78 (1994). Mr. Cagle's guilty pleas in each of these criminal cases precludes his current requests for damages. Here, there is no indication that any of Mr. Cagle's state convictions have been called into question by issuance of a federal writ of *habeas corpus*, and any judgment in his favor would imply the invalidity of his state convictions. Accordingly, any claim Mr. Cagle has raised regarding his Poinsett County convictions are barred under the Supreme Court's ruling in *Heck*.

### 2. Judge Hunter

Beyond that, immunity bars Mr. Cagle's official and personal capacity claims against Judge Hunter. Mr. Cagle's official-capacity claims against Judge Hunter fail because such claims are equivalent of claims against the State of Arkansas. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). Section 1983 provides for a cause of action against a person acting under color of state law who deprives another of a federally protected right. 42 U.S.C. § 1983. However, "neither a State nor its officials acting in their official capacity are 'persons' under § 1983." *Id*. Because Judge Hunter is an official of the State of Arkansas, he cannot be considered a "person" in his official capacity for the purposes of § 1983. As a result, Mr. Cagle's official-capacity claims against Judge Hunter must be dismissed.

Additionally, Judge Hunter is absolutely immune from suit for damage brought against him in his personal capacity under the circumstances presented here. "Judges performing judicial functions enjoy absolute immunity from § 1983 liability." *Robinson v. Freeze*, 15 F.3d 107, 108 (8th Cir. 1994). "[J]udicial immunity is an immunity from suit, not just from ultimate assessment of damages." *Mireles v. Waco*, 502 U.S. 9, 11 (1991). Judicial immunity is overcome only when

a judge acts outside of his judicial capacity or when his actions are taken in complete absence of all jurisdiction. 502 U.S. at 11-12. "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'" *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978) (internal citation omitted). Mr. Cagle has not alleged that Judge Hunter acted outside of his judicial capacity or in complete absence of jurisdiction. Accordingly, absolute immunity applies, and any claims Mr. Cagle has for damages against Judge Hunter in his personal capacity must be dismissed.

### 3. Official Capacity Claims

To state a claim for relief under § 1983, the complaint must allege that a person acting under the color of state law deprived the plaintiff of a constitutional or federally protected statutory right. *American Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 49-50 (1999). "Liability under § 1983 requires a causal link to, and direct responsibility for, the alleged deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)). Factual allegations must be sufficient to "raise a right to relief above the speculative level . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"A suit against a government officer in his official capacity is functionally equivalent to a suit against the employing governmental entity." *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010). To establish municipal liability, Mr. Cagle must identify a policy, practice, or custom attributable to the municipality and show that the policy, practice, or custom

directly caused his alleged constitutional injury. *See Davis v. White*, 794 F.3d 1008, 1014 (8th Cir. 2015) (finding plaintiff "failed to present evidence showing how the Police Department's allegedly poor record keeping directly caused his injury."). A municipality may also be liable for "failure to adopt or follow a needed policy or practice," and to make such a claim, "a plaintiff must show that his alleged injury was caused by municipal employees engaging in a widespread and persistent pattern of unconstitutional misconduct that municipal policymakers were either deliberately indifferent to or tacitly authorized." *Id*. (*citing Russell v. Hennepin Cnty*., 420 F.3d 841, 949 (8th Cir. 2005)).

Mr. Cagle makes no argument that any of the remaining defendants were operating under a policy, practice, or custom of the either the Trumann Police Department or Poinsett County that resulted in a constitutional injury. *See Davis v. White*, 794 F.3d 1008, 1014 (8th Cir. 2015) (finding plaintiff "failed to present evidence showing how the Police Department's allegedly poor record keeping directly caused his injury."). Mr. Cagle also has not alleged that either the City of Trumann or Poinsett County were aware of unconstitutional conduct by the officers or court clerks and tacitly authorized such unlawful conduct.

Accordingly, Mr. Cagle's complaint fails to state official capacity claims against any of the named officers or against the city clerk. Further, without a constitutional violation by an individual officer, Mr. Cagle cannot establish municipal liability. *See Sanders v. City of Minneapolis, Minn*., 474 F.3d 523, 527 (8th Cir. 2007) ("[w]ithout a constitutional violation by the individual officers, there can be no § 1983 or *Monell* . . . liability.").

### 4. Personal Capacity Claims

To state a claim for relief under § 1983 against a defendant in his or her personal or individual capacity, the complaint must allege that a person acting under the color of state law

9

deprived the plaintiff of a constitutional or federally-protected statutory right and must state explicitly the capacity in which defendant is being sued—personal, official, or both. *American Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 49-50 (1999). "Liability under § 1983 requires a causal link to, and direct responsibility for, the alleged deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)). Factual allegations must be sufficient to "raise a right to relief above the speculative level . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Bare allegations void of factual enhancement are insufficient to state a claim for relief under § 1983. *See Iqbal*, 556 U.S. at 678.

Mr. Cagle sued Officers Roberts, Wood, Davison, and Cagle, but he included no specific factual allegations against them. Although Mr. Cagle mentions Ms. Jermerison and Detective Felkins, he raises no constitutional claim against either of them (Dkt. No. 2 at 6). Mr. Cagle says that Ms. Jermerison failed to "pull" his FTA warrant; however, Mr. Cagle does not explain what he thinks that Ms. Jermerison was supposed to do or how it violated his constitutional rights. As for Detective Felkins, he is only mentioned for having provided information to Judge Hunter during a hearing. To the extent that Mr. Cagle argues that unnamed people, presumably police officers, continually harassed Mr. Cagle, it is apparent that Mr. Cagle was required under his 2018 Poinsett County plea agreement to submit to stops and searches by law enforcement. Additionally, based on publicly available information regarding his criminal history, Mr. Cagle did, in fact, have FTA warrants issued against him during the timeframe that he complains that he was unlawfully harassed. So, even if Mr. Cagle had named the officers who stopped and arrested him, the valid

outstanding warrants the Court has discovered based on a public records search likely negate any allegation that he was unlawfully stopped or arrested.

### C. Request For Release

Besides damages, Mr. Cagle asks that the charges from his April 14, 2022, arrest be dropped and that he be released. This remedy is, however, unavailable in a 42 U.S.C. § 1983 lawsuit. "[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or speedier release from imprisonment, his sole federal remedy is a writ of habeas corpus." *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973).

### D. Second Amended Complaint

Due to the deficiencies in his complaint, the Court directs Mr. Cagle to file a second amended complaint under 42 U.S.C. § 1983. Mr. Cagle's second amended complaint must: (1) identify and name as a defendant each person whom he believes violated his rights and whom he wishes to sue in this case; (2) provide specific facts against each named defendant in a simple, concise, and direct manner, including dates, times, and places, if applicable, *i.e.*, he should explain what each defendant allegedly did to violate his rights; (3) explain whether he is suing each defendant in his or her personal or official capacity, or both capacities; (4) explain his reasons for making any official capacity claim; (5) state how he was harmed by the alleged violation(s); (6) describe the relief he seeks; and (7) otherwise cure the above described deficiencies.

Mr. Cagle has 30 days from the date of this Order in which to file a second amended complaint consistent with this Order. Failure to comply with this Order could result in the dismissal of this lawsuit. *See* Local Rule 5.5(c)(2) of the United States District Court for the

Eastern and Western Districts of Arkansas ("If any communication from the Court to a *pro se* plaintiff is not responded to within thirty (30) days, the case may be dismissed without prejudice.").

### V.   Conclusion

It is therefore ordered that:

1. The Court grants Mr. Cagle's application to proceed *in forma pauperis* (Dkt. No. 1).

2. As Mr. Cagle's current custodian, the Administrator of the Poinsett County Detention Center, or his designee, or any future custodian, is directed to collect from Mr. Cagle's institutional account the $350.00 filing fee by collecting monthly payments equal to 20% of the preceding month's income credited to Mr. Cagle's account each time the amount in the account exceeds $10.00. The Administrator of the Poinsett County Detention Center, or his designee, or any future custodian, is further directed to forward the payments to the Clerk of the Court in accordance with 28 U.S.C. § 1915(b)(2), until a total of $350.00 has been collected and forwarded to the Clerk. The payments must be clearly identified by the name and number assigned to this action.

3. The Clerk of the Court is directed to send a copy of this order to the Administrator of the Poinsett County Detention Center, 1500 Justice Dr., Harrisburg, AR 72432.

4. Mr. Cagle's claims against Judge Ron Hunter are dismissed consistent with the terms of this Order.

5. The Court directs Mr. Cagle to file a second amended complaint consistent with this Order within 30 days of the entry of this Order.

6. The Court directs the Clerk of Court to send to Mr. Cagle a blank 42 U.S.C. § 1983 complaint form along with a copy of this Order.

7. Service is not appropriate at this time.

So ordered this 2nd day of June, 2025.

                                                Kristine G. Baker
                                                Chief United States District Judge